UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEBORAH WHEATFALL, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | § CIVIL ACTION NO. H-03-3753 |
| | § |
| THE METHODIST HOSPITAL, | § |
| | § |
| Defendant. | § |

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

Before the Court in this employment discrimination case is Defendant's Renewed Motion for Summary Judgment (Document No. 24), Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment (Document No. 25), and Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment (Document No. 26). After having considered the motion, the response, the summary judgment evidence, and the applicable law, the Court Orders,[1] for the reasons set forth below, that Defendant's Renewed Motion for Summary Judgment is GRANTED.

**I.  Introduction**

The Plaintiff, Deborah Wheatfall ("Wheatfall"), was employed by the Defendant, The Methodist Hospital ("Methodist"), from November 1999 until February 21, 2003, at which time her employment was terminated. Wheatfall claims in this suit that she was discriminated against on the basis of her race (Black), and that she was retaliated against after she complained about race

---

[1] On January 20, 2004, upon the consent of all the parties, this case was transferred to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 13.

discrimination. Wheatfall has asserted race discrimination and retaliation claims under both Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.[2] The basis of Wheatfall's claims is that she was disciplined and placed on a "Performance Correction Plan" ("PCP") after an incident with a co-worker, Cindy Faubion ("Faubion"), while that same non-Black co-worker was not disciplined as severely.

Methodist argues that it is entitled to summary judgment on Wheatfall's discrimination and retaliation claims under Title VII because Wheatfall did not timely file this case. (Document No. 24). Additionally, Methodist maintains that Wheatfall cannot establish a prima face case of either race discrimination or retaliation because there is no summary judgment evidence that she was treated less favorably than a "similarly situated" non-Black employee, and no evidence of a causal connection between Wheatfall's alleged complaint(s) of race discrimination and any adverse employment action.

In response, Wheatfall contends that a prima facie case of race discrimination exists based on the Defendant's adverse action against Wheatfall and the Defendant's preferential treatment of an employee outside the protected class. (Document No. 25). Accordingly, the Plaintiff asserts that there are genuine issues of material fact, and therefore, the motion for summary judgment should be denied.

---

[2] In her First Amended Complaint, Wheatfall makes a passing reference to the Texas Commission on Human Rights Act ("TCHRA"), the state law counterpart to Title VII, but does not allege a claim *per se* under the TCHRA. If Wheatfall intended her reference to the TCHRA to constitute a claim under the TCHRA, such a claim would fail for the same reasons set forth below with respect to Wheatfall's Title VII and § 1981 claims. *See Martin v. The Kroger Co.*, 65 F.Supp.2d 516, 530 (S.D. Tex. 1999) ("The TCHRA is interpreted in a manner consistent with federal laws prohibiting employment discrimination," and thus, the same legal analysis applies to claims brought under Title VII and the TCHRA), *aff'd*, 224 F.3d 765 (5th Cir. 2000); *see also Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 852 n. 1 (5th Cir. 1999); *Grogan v. Savings of America, Inc.*, 118 F.Supp.2d 741, 747 (S.D. Tex.), *aff'd*, 202 F.3d 265 (5th Cir. 1999).

**II.     Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992).  Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 314 (5th Cir. 1995).  The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (*citing United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *Kelley v. Price Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir. 1993); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986).  Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250.  The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325.  "This burden is not satisfied with some

metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257; *Veillon v. Exploration Services, Inc.,* 875 F.2d 1197, 1200 (5th Cir. 1989).

### III.   Discussion

#### A.   Timeliness of Claims under Title VII

Methodist first argues that Wheatfall's race discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e, et seq., should be dismissed because Wheatfall did not timely file this lawsuit within ninety (90) days of her presumptive receipt of a right to sue letter from the EEOC. Wheatfall advances no argument in response to Methodist's motion for summary judgment on timeliness of her Title VII claims.

As a prerequisite to filing a discrimination suit under Title VII, a plaintiff must obtain a right to sue letter from the Equal Opportunity Employment Commission ("EEOC"). *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003). A plaintiff has ninety days from the date such a right to sue letter is received to file suit. *Id.* at 379. "When the date on which a right-to-sue letter is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Id.*

Here, the record shows that Wheatfall filed two charges with the EEOC, one asserting race discrimination, and the other asserting retaliation. With respect to Wheatfall's charge asserting race discrimination, the EEOC issued a right to sue letter on March 13, 2003. *See* Exhibits D3 & D5 to Defendant's Renewed Motion for Summary Judgment (Document No. 24). As for Wheatfall's charge asserting retaliation, the EEOC issued a right to sue letter on June 10, 2003. *See* Exhibits D4 & D6 to Defendant's Renewed Motion for Summary Judgment (Document No. 24). Wheatfall alleges in her First Amended Complaint that she did not receive a right to sue letter until "after June 17, 2003." Plaintiff's First Amended Complaint (Document No. 5) at 3.

Although Wheatfall has offered no proof of when she actually received either of the two right to sue letters, using the most liberal presumptive receipt date of seven days from the date the letter was mailed, *Taylor*, 296 F.3d at 380, the EEOC right to sue letter related to Wheatfall's retaliation claims was presumptively received by Wheatfall on, or prior to, June 17, 2003. Given that presumptive receipt date, this action, filed on September 16, 2004, was filed more than ninety days after Wheatfall's receipt of *either* right to sue letter. Accordingly, Wheatfall's Title VII claims are subject to dismissal as having been untimely filed.

Even if the Title VII claims had been timely filed, summary judgment is warranted on Wheatfall's race discrimination and retaliation claims under Title VII, because summary judgment is, for the reasons set forth below, warranted on Wheatfall's race discrimination and retaliation claims under § 1981.

### B.     Race Discrimination Claims

In her First Amended Complaint, Wheatfall alleges the following in support of her race discrimination claims under Title VII and 42 U.S.C. § 1981:

> . . . . Plaintiff, a black woman, was treated differently than similarly situated persons who were non-black by being subjected to hostile treatment by non-black employees and subjected to different rules based upon her race and/or color. Plaintiff was subjected to different terms of discipline following an incident with a non-black employee while other non-black employees were not being treated in the same or similar manner in that a white coworker was not reprimanded or disciplined for a similar incident. Moreover, Plaintiff was subject to adverse employment conditions because of her race. Plaintiff was subject to disparate treatment on the basis of her race. . . .
>
> . . . . Plaintiff was subjected to treatment by Mr. Metzen and Mr. Griffin that had the effect of unreasonably interfering with Plaintiff's work performance and/or created an intimidating, hostile or offensive work environment for Plaintiff. . . .

Plaintiff's First Amended Complaint (Document No. 5) at 9, 10; *see also* Plaintiff's First Amended Complaint (Document No. 5) at 12, 13-14.

In an employment context, two classes of race discrimination claims are cognizable: "those in which 'a supervisor takes a tangible employment action against the subordinate' and those where the employment relationship 'aids in the commission of supervisor harassment which does not culminate in a tangible employment action,'" but which creates a hostile work environment. *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 760, 763 (1998)). Wheatfall appears to allege that she has been subjected to both types of race discrimination.

Because race discrimination claims under Title VII and § 1981 are considered "under the same rubric of analysis," *Raggs v. Mississippi Power and Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002), Wheatfall's Title VII and § 1981 race discrimination claims will be addressed together.

### 1. Disparate Treatment Claim

With respect to the first class of discrimination claims, disparate treatment claims, a plaintiff must either offer direct evidence in support of a claim of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias. *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)).

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of disparate treatment race discrimination requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated individual outside the protected class. *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which,

'*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas,* 411 U.S. at 802-803. To demonstrate a "pretext for discrimination," the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). A plaintiff can avoid summary judgment if, at the third step of the burden shifting analysis, the plaintiff can "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720. Moreover, "[i]f the plaintiff can show the employer's asserted justification is false, this showing, coupled with a prima facie case, may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence." *Id*. (citing *Reeves*, 530 U.S. at 148).

Wheatfall has not identified any direct evidence in support of her race discrimination claims. Therefore, she must first establish a prima facie case of race discrimination.

Methodist argues in its Renewed Motion for Summary Judgment that Wheatfall has not, and cannot, establish a *prima facie* case of discrimination because she has not demonstrated that any similarly situated non-Black employee was treated more favorably than she. In her First Amended Complaint, Wheatfall identifies Faubion, a white coworker, as a "similarly situated" non-Black employee at Methodist who was treated more favorably than she. Wheatfall, however, has come forth with no summary judgment evidence in support of her allegations in either her First Amended

Complaint or her Response to the Defendant's Renewed Motion for Summary Judgment. (Documents No. 5 & 25, respectively). Methodist, in contrast, has provided the Court with summary judgment evidence that Faubion was treated no differently than Wheatfall, and that both Faubion and Wheatfall were disciplined and placed on PCPs following their altercation in November 2002. *See* Exhibit B to Defendant's Renewed Motion for Summary Judgment (Document No. 24).[3]

---

[3] In Exhibit B to Defendant's Renewed Motion for Summary Judgment is the Affidavit of Daniel Metzen, in which he states:

> 5. Effective July 14, 2002, Deborah Wheatfall came under my overall supervision as a Pharmacy Technician in the Pharmacy Department. In the fall of 2002, Ms. Wheatfall and a co-employee, Cindy Faubion, had difficulty cooperating with one another in the Pharmacy Department. The relationship between Ms. Wheatfall and Ms. Faubion deteriorated to a point when, on November 18, 2002, a physical altercation between them occurred with both women using profanity and, ultimately, resulting in Ms. Faubion throwing a box cutter at Ms. Wheatfall. As a result of this incident, *both* Ms. Wheatfall and Ms. Faubion were placed in a Progressive Correction Program (PCP). On November 19, 2002, the PCP for each employee specified certain performance issues. For Ms. Faubion, these performance issues were "aggressive acts of violent behavior," "abusive language," and "working relations." A true and correct copy of the PCP pertaining to Ms. Faubion is attached hereto as Exhibit (B)(1). For Ms. Wheatfall, the PCP listed the following performance issues: "insubordination", "abusive language", and "working relations." A true and correct copy of the PCP pertaining to Ms. Wheatfall is attached hereto as Exhibit (B)(2).
>
> 6. Ms. Wheatfall's coaching session was conducted by Perry Johnson, who is Black, and her direct supervisor, Melvin Griffin, who is also Black. During the coaching session, Ms. Wheatfall was overtly concerned with the repercussions on Ms. Faubion as a result of their altercation. However, in accordance with Methodist's confidentiality procedures, any discipline levied on Ms. Faubion could not be and was not discussed with Ms. Wheatfall. On December 9, 2002, Ms. Faubion resigned from employment with Methodist because she could no longer tolerate working with Ms. Wheatfall.

Exhibit "B" to Defendant's Renewed Motion for Summary Judgment (Document No. 24) (emphasis added).

While Wheatfall asserts that she was treated differently from Faubion in that she and Faubion received the same punishment despite Faubion having engaged in a violent act (throwing a box cutter) and despite prior complaints being made about Faubion's conduct, the summary judgment evidence is that Faubion and Wheatfall were not "similarly situated" for purposes of Wheatfall demonstrating a prima facie case of discrimination, and that even if they could be considered "similarly situated" they were not treated any differently. "To establish a claim of disparate treatment, [the plaintiff] must show that [the defendant] gave preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances.". *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Wallace v. The Methodist Hospital System*, 271 F.3d 212, 221 (5th Cir. 2001) ("We have held that in order for a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'" ), *cert. denied*, 535 U.S. 2002); *Aguinaga v. Texas Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment).

Here, the summary judgment evidence shows that Wheatfall complained in an email to her supervisor, Dan Metzen, on November 13, 2002, about Faubion's use of profanity. *See* Exhibit "E1" to Defendant's Renewed Motion for Summary Judgment (Document No. 24). Following that complaint, Faubion was counseled about her conduct. See Exhibits "E1" and "F" to Defendant's Renewed Motion for Summary Judgment (Document No. 24). Then following an altercation between Faubion and Wheatfall on November 19, 2002, both Wheatfall and Faubion were disciplined and placed on PCP's. Exhibit B to Defendant's Renewed Motion for Summary Judgment (Document

10

No. 24). Although Wheatfall maintains that Faubion should have suffered more severe consequences for her conduct, which was more serious, such an argument brings no evidence to bear on whether Faubion was treated more favorably. Instead, the argument and the evidence is that Wheatfall and Faubion were treated the same following the incident on November 19, 2002.

Moreover, a review of Wheatfall's employment record with Methodist indicates that Wheatfall, prior to the altercation with Faubion on November 19, 2002, had numerous, ongoing performance problems for which she had received counseling/coaching. *See* Exhibits A3-9 to Defendant's Renewed Motion for Summary Judgment (Document No. 24). In contrast, the summary judgment evidence in the record shows that Faubion's performance problems and resultant counseling started in November 2002, when she began working with Wheatfall. Therefore, even if it could be said that Faubion was treated more favorably that Wheatfall following the November 19, 2002 incident, the record shows that Faubion and Wheatfall, in terms of their respective employment and performance records, were not similarly situated.

Finally, whether or not Faubion was treated more favorably than Wheatfall, and could be considered "similarly situated," the summary judgment evidence shows that Faubion resigned in December 2002, while Wheatfall was terminated in March 2003, following an incident with another employee. There is no summary judgment evidence that Wheatfall, at the time of her termination, was treated any differently than a similarly situated non-Black employee at Methodist. Therefore, there is no genuine issue of material fact on an essential element of Wheatfall's *prima facie* case, and summary judgment is warranted on Wheatfall's disparate treatment race discrimination claims under Title VII and § 1981.

### 2. Hostile Work Environment Claim

For the second class of discrimination claims, those based on a racially hostile work environment, a plaintiff such as Wheatfall must prove that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race, and (4) the harassment affected a term, condition, or privilege of employment. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *see also McCray v. DPC Indus., Inc.*, 942 F.Supp. 288, 292 (E.D. Tex. 1996). To be actionable, the challenged conduct must be sufficiently severe or pervasive in the work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). Whether the harassment is sufficiently severe or pervasive is based on the totality of the circumstances:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 23; *accord Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996). The conduct must be both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the environment to be abusive. *Harris*, 510 U.S. at 21-22.

A review of the record reveals no summary judgment evidence of any harassment based on Wheatfall's race. Indeed, Wheatfall makes no argument and presents no evidence in her response to Defendant's Renewed Motion for Summary Judgment in support of her hostile work environment claim. While Wheatfall alleges in her First Amended Complaint that she "was subjected to treatment by Mr. Metzen and Mr. Griffin [her two supervisors] that had the effect of unreasonably interfering with [her] work performance and/or creating an intimidating, hostile or offensive work environment,"

there is no summary judgment evidence in the record to support any of her allegations. In addition, Wheatfall fails to provide any evidence that her treatment by Mr. Metzen and Mr. Griffin was in any way related to her race. Wheatfall only offers her conclusory testimony as a basis for her allegations. *See* Exhibit A to Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment (Document No. 25). Plaintiff's conclusory statements and subjective accounting of the facts cannot be considered summary judgment evidence. *See Patton v. United Parcel Inc.*, 910 F.Supp. 1250, 1263 (S.D. Tex 1995); *Waggoner v. City of Garland, Texas*, 985 F.2d 1160, 1164 (5th Cir. 1993). Therefore, Methodist is also entitled to summary judgment on Wheatfall's hostile work environment claims under Title VII and § 1981.

    **C.    Retaliation Claim**

In her First Amended Complaint, Wheatfall alleges the following in support of her retaliation claims under Title VII and 42 U.S.C. § 1981:

> The retaliatory and discriminatory practices of the Defendant as directed towards Plaintiff, as set forth above, violate the provisions of Title VII [and 42 U.S.C. § 1981], in that Defendant undertook such actions against Plaintiff because Plaintiff reported racially discriminatory treatment and made complaints regarding a hostile work environment and harassment against her to Human Resources and the ethics hotline of Defendant. Plaintiff's opposition to the Defendant and Metzen's conduct was a proximate cause of her discharge and termination as alleged in this complaint. Plaintiff's complaints to Human Resources and the ethics hotline, regarding racial discrimination and disparate treatment was a proximate cause of her discharge and termination.

Plaintiff's First Amended Complaint (Document No. 5) at 10-11, see also Plaintiff's First Amended Complaint (Document No. 5) at 13-14.

In order to prevail on a retaliation claim, a plaintiff such as Wheatfall must establish a prima facie case of retaliation by adducing evidence (1) that she engaged in protected activity, (2) that an

13

adverse employment action occurred, and (3) that a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002). "Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands. Undesirable work assignments are not adverse employment actions." *Southard,* 114 F.3d at 555 (citations omitted); *Green,* 284 F.3d at 657 ("Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.").

Wheatfall alleges in her First Amended Complaint and her Response to Defendant's Renewed Motion for Summary Judgment that her termination was in retaliation for her complaints of race discrimination to Methodist's Human Resources office and Methodist's ethics hotline. Wheatfall, however, has come forth with no summary judgment evidence in support of her allegations. Plaintiff states in her affidavit that one of the pharmacy managers, Curry Demery, was aware of her ethics complaint. *See* Exhibit A to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 25). However, Plaintiffs fails to offer any evidence supporting her allegation that the managers involved in her termination, Mr. Metzen and Mr. Griffin, had any knowledge of her ethics complaint, or conversely, that Ms. Demery was involved in the decision to terminate her. Methodist, in contrast, has provided the Court with affidavits from Mr. Metzen and Mr. Griffin, in which they both state that they did not know, at the time they decided to terminate Wheatfall's employment, that she had made *any* complaint of race discrimination. *See* Affidavit of Daniel Metzen, attached as

14

Exhibit B to Defendant's Renewed Motion for Summary Judgment (Document No. 24) at ¶ 9 ("at the time of the termination decision, I had no knowledge of Ms. Wheatfall expressing any complaint with regard to alleged racial harassment or mistreatment based on her race."); Affidavit of Melvin Griffin, attached as Exhibit C to Defendant's Renewed Motion for Summary Judgment (Document No. 24) at ¶ 4 (""at the time of the termination decision, I had no knowledge of Ms. Wheatfall expressing any complaint with regard to alleged racial harassment or mistreatment based on her race.").

Because Wheatfall has come forth with no summary judgment evidence of a causal connection between any protected activity and an adverse employment action, Methodist is entitled to summary judgment on Wheatfall's retaliation claims under both Title VII and § 1981.

### IV.   Conclusion and Order

Based on the foregoing, it is

ORDERED that Defendant's Renewed Motion for Summary Judgment (Document No. 24) is GRANTED, and summary judgment is GRANTED in favor of Defendant on all the claims alleged by Plaintiff Deborah Wheatfall.

Signed at Houston, Texas, this 16th day of June, 2005.

Frances H. Stacy
United States Magistrate Judge